**KRIS J. KRAUS**
California State Bar No. 233699
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Kris_Kraus@fd.org

Attorneys for Aureliano Zapata-Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY TED MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 08CR0297-BTM |
| Plaintiff, ) | DATE: March 7, 2008 |
|  ) | TIME: 1:30 p.m. |
| v. ) |  |
| AURELIANO ZAPATA-LOPEZ, ) | STATEMENT OF FACTS AND |
|  ) | MEMORANDUM OF POINTS AND |
| Defendant. ) | AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**BACKGROUND**[1]

On January 7, 2008, Border Patrol Agent Womersley responded to a radio call that a group of individuals were climbing the primary fence in an area known as Whiskey 3 ½. This area is one mile west of the San Ysidro, California Port of Entry and twenty yards north of the International Border. After a brief search Agent Womersley found three individuals lying against the fence. He identifying himself as a border patrol agent and interrogated them regarding their citizenship and immigration status. All are alleged to have stated that they were Mexican citizens with no legal right to enter or remain in the United States.

Later, at the Border Patrol's Imperial Beach Patrol Station, one of the individuals apprehended was identified as Mr. Zapata-Lopez. A subsequent background check revealed that Mr. Zapata-Lopez has criminal

---

[1] Unless otherwise stated, the "facts" referenced in these papers come from government-produced documents that the defense continues to investigate. Mr. Zapata-Lopez does not admit the accuracy of this information and reserves the right to challenge it at any time.

1 and immigration history. Prosecution was authorized. It is then alleged that agents informed Mr. Zapata-Lopez
2 of his constitutional rights under Miranda, that he invoked them.

3       On February 6, 2008 the grand jury returned a true bill of indictment charging Mr. Zapata-Lopez with
4 one (1) count of violating 8 U.S.C. § 1326(a) & (b) -Deported Alien Found in the United States. These
5 motions follow.

## II.

## MOTION TO COMPEL DISCOVERY

8       Mr. Zapata-Lopez moves for the production of the following discovery. This request is not limited
9 to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the
10 custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
11 United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

12       To date, ***defense counsel has received only 31 pages of discovery***. Mr. Zapata-Lopez respectfully
13 requests that the government be ordered to produce discovery because Mr. Zapata-Lopez has reason to believe
14 that he has not received all the discoverable material in his case. Mr. Zapata-Lopez specifically requests
15 production of a copy of the taped proceedings and any and all documents memorializing the deportation
16 proceedings allegedly held and any other proceedings that the government intends to rely upon at trial. This
17 request includes discovery of materials known to the government attorney, as well as discovery of materials
18 which the government attorney may become aware of through the exercise of due diligence. See FED. R. CRIM.
19 P. 16.

20       Mr. Zapata-Lopez has also not received a full copy of his A-file. Mr. Zapata-Lopez filed a request
21 for his A-file with the National Records Center pursuant to the Freedom of Information Act, however, he fears
22 that his request will not be processed until after the completion of his trial. Thus, Mr. Zapata-Lopez requests
23 a full copy of his A-file and any other immigration files linked to his immigration history. Mr. Zapata-Lopez
24 specifically requests the documents memorializing the alleged deportation proceedings and any other
25 proceedings that the government intends to rely upon at trial.

26       Mr. Zapata-Lopez additionally requests that the Court order the government to allow him the
27 opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his alleged
28 //

1  deportation. Part of Mr. Zapata-Lopez defense may be that his underlying deportation was invalid. The
2  documents in the A-file would help illuminate the validity or futility of such a defense. For example, A-file
3  documents typically contain biographical information. Such information is essential to determining whether
4  Mr. Zapata-Lopez's deportation was invalid.
5       Second, the government will likely try to show at trial that a government officer searched the A-file
6  and did not find an application by Mr. Zapata-Lopez for permission to enter the United States. Mr. Zapata-
7  Lopez anticipates that the government will attempt to admit a "Certificate of Non-Existence of Record"
8  against him, arguing that if Mr. Zapata-Lopez had ever applied for permission to enter the United States, such
9  an application would be found in the A-file and because such an application is not in the A-file, Mr. Zapata-
10  Lopez must not have applied for permission to enter the United States.
11       Although the certificate might be admissible, the question of the thoroughness of the search
12  conducted by the government of the A-file is, and should be, open to cross-examination. United States v.
13  Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Zapata-Lopez
14  should be able to review his A-file in order to see whether any application for lawful admission exists.
15  Moreover, Mr. Zapata-Lopez should also be able to verify whether other documents that would ordinarily be
16  in the A-file are "non-existent," or otherwise missing from his A-file. Mr. Zapata-Lopez may assert a defense
17  that his application for lawful entry was lost or otherwise misplaced by the government. He must be allowed
18  the opportunity to review his A-file and the manner in which it is being maintained by the government in order
19  to present this defense.
20       In addition, Mr. Zapata-Lopez moves for the production by the government of the following
21  discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all
22  discovery listed below that is in the custody, control, care, or knowledge of *any government agency*. See
23  generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).
24       (1) Mr. Zapata-Lopez's Statements. The government must disclose to Mr. Zapata-Lopez *all* copies
25  of any written or recorded statements made by him; the substance of any statements made by him that the
26  government intends to offer in evidence at trial; any response by him to interrogation; the substance of any
27  oral statements which the government intends to introduce at trial and any written summaries of him oral
28  statements contained in the handwritten notes of government agent; any response to any Miranda warnings

that may have been given to him; as well as any other statements by him. FED. R. CRIM. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* Mr. Zapata-Lopez's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. Additionally, the government must "disclose *any written record* which contains *reference to* a relevant oral statement by Mr. Zapata-Lopez which was in response to interrogation, without regard to whether the prosecution intends to use the statement at trial." FED. R. CRIM. P. 16 advisory committee notes (1991 Amendment) (emphasis added).

(2) <u>Arrest Reports, Notes, Dispatch Tapes, and Audio/Video Recordings</u>. Mr. Zapata-Lopez also specifically requests that all arrest reports, notes, and dispatch or any other audio/video recordings that relate to the circumstances surrounding arrest or any questioning, be turned over. This request includes, but is not limited to, any rough notes, records, reports, in field communication between officers, transcripts or other documents in which statements of Mr. Zapata-Lopez or any other discoverable material is contained. **Mr. Zapata-Lopez includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has written**. This is all discoverable under FED. R. CRIM. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir.), <u>cert. denied</u>, 393 U.S. 869 (1968); <u>United States v. Johnson</u>, 525 F.2d 999 (2d Cir. 1975), <u>cert. denied</u>, 424 U.S. 920 (1976); <u>United States v. Lewis</u>, 511 F.2d 798 (D.C. Cir. 1975); <u>United States v. Pilnick</u>, 267 F. Supp. 791 (S.D.N.Y. 1967).

Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, audio/video recordings, sworn statements, and prosecution reports pertaining to the defendant are available under FED. R. CRIM. P. 16(a)(1)(B) and (c), FED. R. CRIM. P. 26.2 and 12(I). **Preservation of rough notes is specifically requested, whether or not the Government deems them discoverable at this time**.

(3) <u>Brady Material</u>. Mr. Zapata-Lopez requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case. Impeachment, as well as, exculpatory evidence falls within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower Sentence Under The Sentencing Guidelines</u>. As discussed above, this information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). This request

1  includes any cooperation or attempted cooperation by Mr. Zapata-Lopez, as well as any information that could
2  affect any base offense level or specific offense characteristic under Chapter Two of the Sentencing
3  Guidelines. Also included in this request is any information relevant to a Chapter Three adjustment, a
4  determination of Mr. Zapata-Lopez's criminal history, or any other application of the Guidelines.

5  (5) <u>Mr. Zapata-Lopez's Prior Record</u>. Evidence of prior record is discoverable under FED. R. CRIM.
6  P. 16(a)(1)(B). Defense Counsel specifically requests a complete copy of any criminal record. Mr. Zapata-
7  Lopez requests all evidence, documents, records of judgments and convictions, photographs and tangible
8  evidence, and information pertaining to any prior arrests and convictions.

9  (6) <u>Any Proposed 404(b) Evidence</u>. Evidence of prior similar acts is discoverable under FED. R.
10 CRIM. P. 16(a)(1)(c) and FED. R. EVID. 404(b) and 609. In addition, under FED. R. EVID. 404(b), "upon request
11 of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature
12 . . ." of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial. Sufficient
13 notice requires the government to "articulate <u>precisely</u> the evidential hypothesis by which a fact of
14 consequence may be inferred from the other acts evidence." <u>United States v. Mehrmanesh</u>, 689 F.2d 822, 830
15 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> <u>United States v. Brooke</u>, 4 F.3d 1480,
16 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions).

17 This includes any "TECS" records (records of prior border crossings) that the government intends
18 to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. <u>United States v. Vega</u>, 188 F.3d
19 1150, 1154-55 (9th Cir. 1999). Although there is nothing intrinsically improper about prior border crossings,
20 they are nonetheless subject to 404(b), as they are "other acts" evidence that the Government must produce
21 before trial. <u>United States v. Vega</u>, 188 F.3d 1150, 1154-55 (9th Cir. 1999).

22 Mr. Zapata-Lopez requests that such notice be given **at least four (4) weeks before trial** to give the
23 defense time to adequately investigate and prepare for trial.

24 (7) <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant,
25 is discoverable under FED. R. CRIM. P. 16(a)(1)(c), and Mr. Zapata-Lopez requests it.

26 (8) <u>Tangible Objects</u>. Mr. Zapata-Lopez requests, under FED. R. CRIM. P. 16(a)(1)(c), the opportunity
27 to inspect and copy as well as test, if necessary, all other documents and tangible portions objects, including
28 photographs, books, papers, documents, photographs of buildings or places or copies of thereof which are

1  material to the defense or intended for use in the government's case-in-chief or were obtained from or belong
2  to him.

3  **Specifically, Mr. Zapata-Lopez requests color copies of all photographs in this case in the
4  Government's possession**.

5  (9) <u>Evidence of Bias or Motive to Lie</u>. Mr. Zapata-Lopez requests any evidence that any prospective
6  government witness is biased or prejudiced against Mr. Zapata-Lopez, or has a motive to falsify or distort his
7  or him testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th
8  Cir. 1988).

9  (10) <u>Impeachment Evidence</u>. Mr. Zapata-Lopez requests any evidence that any prospective
10 government witness has engaged in any criminal act whether or not resulting in a conviction and whether any
11 witness has made a statement favorable to Mr. Zapata-Lopez. <u>See</u> FED. R. EVID. 608, 609 and 613. Such
12 evidence is discoverable under <u>Brady v. Maryland</u>, <u>supra</u>. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th
13 Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that
14 detracts from a witness' credibility).All of this is relevant impeachment information.

15 (11) <u>Evidence of Criminal Investigation of Any Government Witness</u>. Mr. Zapata-Lopez requests
16 any evidence that any prospective witness is under investigation by federal, state or local authorities for any
17 criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

18 (12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>. Mr. Zapata-Lopez
19 requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any
20 prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any
21 evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.
22 <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir.
23 1980).

24 (13) <u>Witness Addresses</u>. Mr. Zapata-Lopez requests the name and last known address of each
25 prospective government witness. <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States
26 v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective);
27 <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).
28 Mr. Zapata-Lopez also requests the name and last known address of every witness to the crime or crimes

1  charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government
2  witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

3  (14) <u>Name of Witnesses Favorable to Mr. Zapata-Lopez</u>. Mr. Zapata-Lopez requests the name of any
4  witness who made any arguably favorable statement concerning him or who could not identify him or who
5  was unsure of him identity, or participation in the crime charged. <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th
6  Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d 1164, 1168
7  (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>,
8  444 U.S. 1086 (1980).

9  (15) <u>Statements Relevant to the Defense</u>. Mr. Zapata-Lopez requests disclosure of any statement that
10 may be "relevant to any possible defense or contention" that he might assert. <u>United States v. Bailleaux</u>, 685
11 F.2d 1105 (9th Cir. 1982). **This includes grand jury transcripts that are relevant to Mr. Zapata-Lopez's**
12 **motion to dismiss the indictment.**

13 (16) <u>Jencks Act Material</u>. Mr. Zapata-Lopez requests all material to which he is entitled pursuant to
14 the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal
15 acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for
16 the report or notes to qualify as a statement under § 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487,
17 490-92 (1963).

18 (17) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Mr. Zapata-Lopez
19 requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange
20 for their testimony in this case, and all other information which could arguably be used for the impeachment
21 of any government witnesses.

22 (18) <u>Reports of Scientific Tests or Examinations</u>. Pursuant to FED. R. CRIM. P. 16(a)(1)(D),
23 Mr. Zapata-Lopez requests the reports of all tests and examinations conducted upon the evidence in this case.
24 Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within
25 the possession, custody, or control of the government, the existence of which is known, or by the exercise of
26 due diligence may become known, to the attorney for the government, and which are material to the
27 preparation of the defense or are intended for use by the government as evidence in chief at the trial.
28 //

(19) <u>Henthorn Material</u>. Mr. Zapata-Lopez requests that the prosecutor review the personnel files of the officers involved in this arrests, and those who will testify, and produce to him any exculpatory information at least two weeks prior to trial and one week prior to the motion hearing. See <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). In addition, he requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an *in camera* inspection.

(20) <u>Informants and Cooperating Witnesses</u>. Mr. Zapata-Lopez requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case. To the extent that there was any informant, or any other tip leading to a TECS hit in this case Mr. Zapata-Lopez requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against him. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). Mr. Zapata-Lopez also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments, or threats were made to the witness to secure cooperation with the authorities.

(21) <u>Expert Witnesses</u>. Mr. Zapata-Lopez requests disclosure of the identities of any expert witnesses the government intends to call at trial as well as "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." FED. R. CRIM. P. 16(a)(1)(E).

(22) <u>Personnel Records of Government Officers Involved in the Arrest</u>. Mr. Zapata-Lopez requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Zapata-Lopez. See <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

(23) <u>Training of Relevant Law Enforcement Officers</u>. Mr. Zapata-Lopez requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law

enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Mr. Zapata-Lopez also requests all written or otherwise attainable information regarding the training of ICE agents at ports of entry in California to detect or discover narcotics in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

(24) <u>Names and Contact Information for All Agents in the Field at the Time of the Arrest</u>. Mr. Zapata-Lopez requests the name and contact information for each of the agents in the field at the time of the arrest. <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Zapata-Lopez also requests the name and contact information of every agent to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

(25) <u>Agreements Between the Government and Witnesses</u>. Mr. Zapata-Lopez requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

(26) <u>Residual Request</u>. Mr. Zapata-Lopez intends by this discovery motion to invoke him rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Zapata-Lopez

1  requests that the government provide him and his attorney with the above requested material sufficiently in
2  advance of trial.

### III.

### THIS COURT SHOULD ORDER PRESERVATION OF EVIDENCE

Mr. Zapata-Lopez requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. United States v. Riley, 189 F.3d 802, 806-08 (9th Cir.1999). This request includes, but is not limited to: (1) the results of any fingerprint analysis; (2) Mr. Zapata-Lopez's personal effects; (3) the agents' rough notes; (4) any radio broadcast, if it is recorded; (5) any evidence seized from Mr. Zapata-Lopez or any third party (i.e., material witnesses, co-defendants); (6) any alleged contraband seized in this case; (7) and any cellular phone(s). This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

### IV.

### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel has received **31 pages** of discovery in this case and has not yet had the opportunity to complete important aspects of the investigation. As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Zapata-Lopez will almost certainly find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

//
//
//
//
//

# V.

## **CONCLUSION**

For the foregoing reasons, Mr. Zapata-Lopez respectfully requests that the Court grant the above motions.

                                          Respectfully submitted,

Dated: February 22, 2008                    /s/ Kris J. Kraus
                                          **KRIS J. KRAUS**
                                          Federal Defenders of San Diego, Inc.
                                          Attorneys for Mr. Zapata-Lopez
                                          Kris_Kraus@fd.org